STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Elaine MEEK, Respondent.

SCBD No. 4154.

Supreme Court of Oklahoma.

Oct. 22, 1996.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Elaine Meek, Tulsa, Pro se.

KAUGER, Vice Chief Justice:

The complainant, Oklahoma Bar Association (Bar Association), charged the respon-

dent, Elaine Meek, with six counts [1] of professional misconduct. There is clear and convincing evidence [2] of the respondent's violation of the Rules of Professional Conduct: 1) charging of a fee unsupported by her work product [Rule 1.5, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A]; 2) failing to provide competent representation [Rule 1.1, Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A]; 3) neglecting legal matters [Rule 1.3, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A]; 4) failing to communicate with clients [Rule 1.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A]; 5) misrepresenting the status of cases to clients and to the Bar Association and conduct prejudicial to the administration of justice [Rule 8.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A]; and 6) failing to comply with regulations governing a prior suspension [Rule 9.1, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A] or to cooperate in this grievance proceeding [Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A]. We find that the respondent's misconduct, her disciplinary history,[3] discipline imposed in similar cases and the total disregard for the grievance process warrant disbarment and the imposition of $1,134.80 in costs.[4]

## FACTS

### A. Dealings with Clients.

In November of 1993, Ethel Ellis (Ellis) paid $2,500.00 to Elaine Meek, the respondent, to file a fast track appeal of her son's criminal conviction. The fee was not placed in a trust account.[5] The respondent filed the

---

1. Originally, the Bar Association charged the respondent with seven counts. However, a charge involving the unauthorized practice of law while under suspension was dropped when the Bar Association realized that they had mistakenly noted the date of the attorney's prior suspension.

2. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 867 P.2d 1279, 1281 (Okla.1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 810 P.2d 826, 830 (Okla. 1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell,* 663 P.2d 1228, 1232 (Okla.1983).

3. *State ex rel. Oklahoma Bar Ass'n v. Moss,* 682 P.2d 205, 207 (Okla.1983).

4. Rule 6.13, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A; Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

5. The respondent indicated at her deposition given on November 14, 1995, that she was maintaining a trust account when she received the $2,500.00. She agreed to provide the Bar Association with her trust account records, but she never complied. On her statement of annual dues filed with the Bar Association, the attorney

fast track appeal on November 18, 1993. However, because the paperwork was not in the right form, the Court of Criminal Appeals issued an order on December 27, 1993, directing the respondent to submit a corrected brief. The respondent failed to file the requested brief, and on June 27, 1994, the Court of Criminal Appeals ordered her to show cause why she had neither responded to the order nor diligently proceeded with the appeal. Although the respondent met with her client on August 3, 1994, and assured her the proper filings had been delivered "by over night express mail,"[6] she did not respond to the show cause order. No brief was ever filed, and the appeal was dismissed by the Court of Criminal Appeals on January 18, 1995. The respondent alleged that her attempt to file a brief out of time was rejected, but the court's docket does not reflect any attempted filings by the respondent.

Sandra Gray (Gray) hired the respondent to assist in collecting back child support in June of 1993. Although the respondent was successful in collecting some support, Gray was disappointed with the results, and she attempted to hire another lawyer. The second lawyer told Gray that she needed to get her files from the respondent. When Gray could not locate the respondent by phone, she went to her office, and discovered that the respondent no longer officed there. Shortly after her attempt to contact her, she saw the respondent at a Hispanic Festival, and Gray attempted to discuss her case with the respondent. Gray testified that the respondent's behavior was unusual. Her testimony at the disciplinary hearing provides in pertinent part:

"... I seen her, and I said, 'Elaine'. And she just kind of looked at me. And I don't know, I work in the behavioral health department for the psychiatrist and psychologist, so she appeared to, I don't know, she appeared to act real strange, and she was

kind of —— I said, I've tried to get in touch with you, and she said well, I'm in the phone book. She kind of ran away...."

Gray was unable to find a listing in the Tulsa directory for her, and on October 2, 1995, she filed a complaint with the Bar Association alleging that she could not contact the respondent and requesting assistance.

**B. Response to the Bar Association.**

The cause was instituted as a Rule 6 proceeding.[7] The Bar Association contacted the respondent by mail on March 8, March 28, August 16, and September 20, 1995, in an attempt to get her to respond to the Ellis grievance. The respondent did not reply to any of these requests. After the Bar Association served her using a private process server, she appeared and gave her deposition concerning the grievance on November 14, 1995.

At the deposition, the respondent initially refused to give an address where she could be contacted by the Bar Association. The respondent alleged that she was concerned that there was a conspiracy against her involving certain members of the Bar Association and employees in the General Counsel's Office which may have resulted in an inquiry by the Federal Bureau of Investigation. She also expressed concerns that if she could be located through the Bar Association, she and her daughter might be put in physical danger from a former client serving a prison sentence. The respondent agreed that the post office box the Bar Association had listed as her official roster address would serve as an appropriate address to communicate with her. Although the respondent agreed to provide the Bar Association with records of her trust account and with copies of the documents she had filed on behalf of Ellis, none of the requested materials were received by the Bar Association.

Gray filed a grievance with the Bar Association on October 2, 1995. The Bar Associa-

---

indicated that did not receive or disburse clients' funds and therefore did not maintain a trust account. The respondent also indicated that she didn't believe she would have been obligated to deposit the check because it was for fees earned.

**6.** The respondent denied that she had advised Ellis that a brief would be filed. However, a

letter authored by Ellis and dated August 13, 1994, recounts the conversation in which the attorney indicated to her that the brief had been filed by express delivery.

**7.** Rule 6.1, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

tion forwarded the grievance to the respondent on November 28, 1995, and it requested that she reply within twenty days. The request was never returned, nor did she reply. A second copy of the grievance was sent to the respondent by certified mail at the address which she had provided. It was returned unclaimed. On January 9, 1996, the Bar Association served the respondent by private process server with a subpoena to appear and to answer the grievance. Although she was properly served, the respondent failed to appear for her deposition on January 24, 1996.

On February 26, 1996, the Bar Association mailed the formal complaint to the respondent by certified mail, return receipt requested and restricted delivery. No answer was filed within twenty days,[8] and a private process server was hired to serve the complaint. Service was accomplished on March 21, 1996. After the respondent failed timely to answer, the Bar Association filed a motion to deem the allegations admitted pursuant to Rule 6.4, Rules of Disciplinary Proceedings. The respondent was given notice of the hearing on the motion on April 23, 1996, and she was ordered to appear for the hearing on May 1, 1996, to show cause why the motion should not be granted. She did not appear, and the motion was granted on May 13, 1996. The respondent was ordered to appear at the Bar Center on June 12, 1996, for the disciplinary hearing, but she neither responded to the order nor appeared at the hearing.

### I.

### THERE IS CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE MULTIPLE CHARGES OF ATTORNEY MISCONDUCT.

■ Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[9] The record is sufficient to support the multiple charges levied against the respondent. The respondent testified in her deposition taken at the Bar Center on November 14, 1995, that she spent approximately fifty hours on the Ellis case. However, her work product—an unacceptable filing before the Court of Criminal Appeals—and the result reached—dismissal without consideration of the merits of Ellis' appeal—do not support a fee of $2,500.00.[10] It is obvious that the representation which Ellis received was not competent, and that the respondent neglected the case. Furthermore, the respondent misrepresented to her client, and to the Bar Association, that she had delivered to the Court of Criminal Appeals by "over night express mail" a brief which was never filed.[11] The respondent avoided Gray and misled her as to how she could be reached.[12]

The respondent's dealings with her clients and with the Bar Association in the grievance process were prejudicial to the administration of justice. On October 24, 1994, this Court promulgated its opinion suspending the respondent for one year for commingling and conversion of client funds and for misrepresentations made to the Bar Association.[13] Rehearing was denied on January 23, 1995, and the one-year suspension began. To date, the respondent has not notified her clients of her inability to represent them pursuant to Rule 9.1, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. Despite notice by regular and certified mail on numerous occasions and service by a private process server on three different dates,

---

8. Rule 6.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

9. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, see note 2, supra.

10. See, Rule 1.5, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, for the factors to be considered in determining the reasonableness of a fee.

11. See discussion p. 555, supra.

12. See discussion, pp. 554–555 supra.

13. *State ex rel. Oklahoma Bar Ass'n v. Meek*, 895 P.2d 692, 694–95 (Okla.1994).

the respondent has been uncooperative in the grievance and the complaint process.[14]

## II.

**THE ATTORNEY'S MISCONDUCT, HER DISCIPLINARY HISTORY, DISCIPLINE ADMINISTERED IN SIMILAR CASES, AND THE TOTAL DISREGARD FOR THE DISCIPLINARY PROCESS WARRANT DISBARMENT AND THE PAYMENT OF COSTS IN THE AMOUNT OF $1,134.80.**

■ In disciplinary matters, this Court possesses exclusive original jurisdiction.[15] We are not bound by agreed findings, conclusions of law or recommendations for discipline.[16] Our review is *de novo* in considering the record presented as well as the recommendations for discipline.[17] The responsibility of this Court in disciplinary proceedings is not to punish but to inquire into and to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[18]

This Court has not considered facts identical to those presented. However, in similar situations, we have administered discipline ranging from a ninety-day suspension to disbarment.[19] In *State ex rel. Oklahoma Bar Ass'n v. Phillips*, 786 P.2d 1242, 1246 (Okla.

1990), an attorney with no prior disciplinary history was suspended for three years for neglect of a legal matter, failure to answer a grievance, and failure to respond to a lawful demand for information from the Bar Association. We disbarred the lawyer in *State ex rel. Oklahoma Bar Ass'n v. McCurtain*, 767 P.2d 427, 430 (Okla.1989)[20] for neglecting client matters, by either converting client property or failing to account for it, and for refusing to cooperate with the investigation of those matters, while under suspension for neglect of legal matters and failure to cooperate in the grievance investigation.

■ The respondent's situation most closely resembles the facts presented in *McCurtain*. Like McCurtain, the respondent has been disciplined before. In *State ex rel. Oklahoma Bar Ass'n v. Meek*, 895 P.2d 692, 694–95 (Okla.1994) (*Meek I*), the respondent was suspended for one year for misconduct similar to the actions giving rise to the grievances filed here: failure to communicate with clients, mishandling of client funds and making misrepresentations to the Bar Association in the grievance process. Here, the respondent is again charged with multiple counts of misconduct——at least one of which involves charging of a fee unsupported by her work product. The respondent made misrepresentations to the Bar Association

---

**14.** We note that the respondent did appear for her deposition in reference to the Ellis grievance. However, she did not comply with the requests of the Bar Association to provide evidence of her filings with the Court of Criminal Appeals or with evidence that the $2,500.00 fee had been filed in a trust account.

**15.** Rule 1.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1992, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989).

**16.** *State ex rel. Oklahoma Bar Ass'n v. Leigh*, 914 P.2d 661, 667 (Okla.1996); *State ex rel. Oklahoma Bar Ass'n v. Butler*, 848 P.2d 540, 542 (Okla.1992).

**17.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2 at 1284, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

**18.** *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 904 P.2d 597, 602 (Okla.1995); *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 848 P.2d 543, 545 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Colston*, 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Ass'n v. Moss*, 682 P.2d 205, 207 (Okla.1983).

**19.** *State ex rel. Oklahoma Bar Ass'n v. Evans*, 880 P.2d 333, 338 (Okla.1994) [Two-year and one-day suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 880 P.2d 339, 345 (Okla.1994) [Ninety-day suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Thompson*, 864 P.2d 339, 343 (Okla. 1993) [Ninety-day suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Wolfe*, 864 P.2d 335, 339 (Okla.1993) [Six-month suspension.].

**20.** We note that although there is some concern about the attorney's perceptions regarding the Bar Association here, see pp. 555–556, supra, there is not a string of disciplinary matters before the Court as there was in *State ex rel. Oklahoma Bar Ass'n v. McCurtain*, 767 P.2d 427, 430 (Okla.1989) (See, Kauger, J. dissenting.).

about supplying requested information, she has refused to participate in the grievance process, and she has not complied with the regulations governing her prior suspension.[21]

The respondent has not argued that this complaint should have been merged with the complaint in *Meek I*. Even if that were the case, the respondent's delay in responding to this grievance, and her failure to respond to requests for documents would have prevented a simultaneous consideration of the two complaints.[22] We find that the respondent's misconduct, her disciplinary history, discipline administered in similar cases, coupled with her disregard for the grievance process warrants disbarment.

The Bar Association submitted an application to assess costs of $1,134.80 on August 27, 1996, which are approved.[23]

## CONCLUSION

The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[24] Upon a *de novo* review of the record, we find that the respondent: charged a fee unsupported by her work product; failed to provide competent representation to her client; neglected legal matters; failed to communicate with clients; made misrepresentations to clients and to the Bar Association; engaged in conduct prejudicial to the administration of justice; failed to comply with regulations governing a prior suspension; and did not cooperate in the grievance process. Here, while under suspension, the respondent: actively avoided her client; did not notify her clients she was under an order of suspension; made misrepresentations to the Bar Association; and refused to participate in the grievance process.

The respondent's actions, coupled with the circumstances of her prior suspension in *State ex rel. Oklahoma Bar Ass'n v. Meek,* 895 P.2d 692 (Okla.1994), demonstrate an indifference to her obligations as a member of the Oklahoma Bar Association. The conduct warrants disbarment and the payment of costs in the amount of $1,134.80.

**RESPONDENT DISBARRED. COSTS IMPOSED.**

ALMA WILSON, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

---

**21.** Rule 9.1, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

**22.** *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 919 P.2d 427, 431 (Okla.1996).

**23.** Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A.

**24.** *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 2 at 1287, supra; *Tweedy v. Oklahoma Bar Ass'n,* 624 P.2d 1049, 1052 (Okla.1981).